# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

DEANA G. AKERS,                          )
                                         )
              Plaintiff,                 )        Case No. 3:12-CV-01944-CL
                                         )
       v.                                )        **REPORT AND RECOMMENDATION**
                                         )
CAROLYN L. COLVIN,                       )
Commissioner of Social Security,         )
                                         )
              Defendant.                 )
_____)

Alan Unkeles, 3000 NW Stucki Place, Suite 230, Hillsboro, OR 97124; Tim Wilborn, P.O. Box 370578, Las Vegas, NV 89137. Attorneys for Plaintiff.

S. Amanda Marshall, United States Attorney, and Adrian L. Brown, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Lars J. Nelson, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.


**MARK D. CLARKE, Magistrate Judge**.

Plaintiff Deana Akers ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). Because the Commissioner's decision is not supported by substantial evidence, the decision should be **REVERSED**.

## BACKGROUND

Born in 1963, plaintiff was 43 years old on the alleged disability onset date of July 30, 2006. Tr. 198. Plaintiff speaks English and has a high school education, and has past work experience as a small dog and cat groomer. Tr. 57, 225-27.

Plaintiff filed applications for DIB and SSI on October 17, 2006, alleging disability due to fibromyalgia, right shoulder impairment, right knee osteoarthritis, obesity, degenerative disc disease, diabetes, anxiety, depression, and post-traumatic stress disorder ("PTSD"). Tr. 198-200, 204-07, 226. The Commissioner denied plaintiff's application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). After an administrative hearing, the ALJ issued a decision finding plaintiff not disabled on November 2, 2009. Tr. 79-93. On February 9, 2011, the Appeals Council issued an order remanding the case to the ALJ for further proceedings. Tr. 94-97. After a second hearing, the ALJ issued a decision dated May 20, 2011, again finding plaintiff not disabled. Tr. 16-29. Plaintiff's subsequent request for review was denied by the Appeals Council, making the ALJ's decision the final Agency decision. Tr. 1-6; 20 C.F.R. §§ 416.1481, 422.210 (2012). Plaintiff now seeks judicial review of that decision.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.1520 (DIB); 20 C.F.R. § 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). The five-step

sequential process asks the following series of questions:

1.      Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2.      Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.   Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert,* 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett,* 180 F.3d at 1099.

## THE ALJ'S FINDINGS

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity after the alleged onset date. Tr. 18. At step two, the ALJ found plaintiff had the following severe impairments: right shoulder injury, status post right knee arthroplasty, obesity, degenerative disc disease, fibromyalgia, anxiety, and depression. *Id.* At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 19.

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined that plaintiff retains the ability to perform light work with the following limitations: plaintiff can stand and walk two to four hours out of an eight-hour workday and can sit the remainder of the time; she can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; she can frequently balance; she should never climb ladders, ropes or scaffolds and she cannot reach overhead with the right upper extremity; she should avoid concentrated exposure to vibration; she is limited to unskilled work and routine tasks; and she can only have superficial interaction with coworkers with no close cooperation or coordination and no interaction with the public. Tr. 21. At step four, the ALJ found plaintiff was unable to perform any of her past relevant work. Tr. 27. At step five, the ALJ found that plaintiff retains the RFC to work as an assembler and as a glass frame polisher, jobs which exist in significant numbers in the national economy. Tr. 28. The ALJ therefore concluded that plaintiff is not disabled. Tr. 29.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's

interpretation is a rational reading of the record, and this court may not substitute its judgment

for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However,

a reviewing court must consider the entire record as a whole and may not affirm simply by

isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th

Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation

marks omitted)). The reviewing court, however, may not affirm the Commissioner on a ground

upon which the Commissioner did not rely. *Orn,* 495 F.3d at 630; *see also Bray,* 554 F.3d

at 1226-26 (citing *SEC v. Chenery Corp.,* 332 U.S. 194, 196 (1947)).

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) improperly assessing her mental RFC, (2)

improperly evaluating the medical evidence, (3) improperly rejecting plaintiff's testimony, (4)

improperly evaluating lay witness testimony, and (5) failing at step five to identity jobs that

plaintiff can perform. The court finds that the ALJ's decision is not supported by substantial

evidence and should therefore be reversed.

### Mental RFC

Plaintiff first argues that the ALJ "failed ... entirely" to assess her mental RFC. The

court disagrees. The ALJ found plaintiff has moderate difficulties in social functioning and in

maintaining concentration, persistence, or pace. Tr. 20. The ALJ incorporated these limitations

into plaintiff's RFC by limiting her to "unskilled work and routine tasks." Tr. 21. The Ninth

Circuit has held that a restriction to "unskilled work and routine tasks" can account for moderate

limitations in concentration, persistence, and pace. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169,

1174 (9th Cir. 2008) (limitation to "simple tasks" adequately captured claimant's moderate

limitations in concentration, persistence, and pace). The ALJ properly considered the medical

record and incorporated all identified limitations into the RFC.  *See Turner v. Comm'r*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) (an ALJ is not required to credit limitations that a medical source did not identify).   On this record, the ALJ's formulation of plaintiff's RFC was rational, and should therefore be upheld.  *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (the ALJ's reasonable decision must be upheld even if the evidence "is susceptible to more than one rational interpretation"); *see also Sample*, 694 F.2d at 642.

**Medical Evidence**

Plaintiff next argues that the ALJ improperly rejected the opinions of Drs. Stephen Thomas and Christopher Komanapalli.  The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions.  *Carmickle v. Comm'r*, 533 F.3d 1155, 1164 (9th Cir. 2008).  The Ninth Circuit distinguishes between the opinions of three types of physicians:  treating physicians, examining physicians, and non-examining physicians.  The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).  In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician.  *Lester*, 81 F.3d at 830.  As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  If the opinion of an

examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Andrews*, 53 F.3d at 1034.

## 1.    Examining Physician Stephen Thomas, M.D.

Dr. Thomas examined plaintiff in 2003 and diagnosed mild degenerative arthritic changes of the cervical and lumbar spine, depression, and a suspect tear of her right medial meniscus. Tr. 426. While the ALJ failed to mention Dr. Thomas by name, he arguably referenced Dr. Thomas' findings when he referred to plaintiff's medical records collected before her alleged onset date of July 30, 2006. Tr. 23. Moreover, any error in omitting Dr. Thomas' opinion in the ALJ's decision is harmless because all limitations assessed by Dr. Thomas are not required by the jobs identified by the VE at step five. *See Stubbs-Danielson,* 539 F.3d at 1174 (holding that an error in assessing limitations was harmless because the jobs identified did not require those limitations). The ALJ's failure to discuss Dr. Thomas' opinion in detail was not reversible error.

## 2.    Examining Orthopedist Christopher Komanapalli, M.D.

Dr. Komanapalli performed a consultative examination of plaintiff in 2006. He diagnosed knee pain, fibromyalgia, temporomandibular disorder, shoulder injury, diabetes, and hypertension. Tr. 897-902. The ALJ stated that he credited Dr. Komanapalli's opinion "to the extent it is consistent with the existing medical evidence," but failed to note Dr. Komanapalli's finding that plaintiff is restricted to only occasional reaching, handling, fingering, and grasping due to "chronic shoulder pain." Tr. 27, 902.

The Commissioner argues that the ALJ provided legally sufficient reasons for rejecting Dr. Komanapalli's opinion. Specifically, the ALJ gave "significant weight" to the opinion of non-examining consultative physician Martin Kehrli, M.D., who indicated on a check-the-box form that plaintiff has no limitations in handling, fingering, and feeling. Tr. 1491. Because Dr. Kehrli's opinion contradicts Dr. Komanapalli's findings, the ALJ was required to provide specific, legitimate reasons supported by substantial evidence for rejecting Dr. Komanapalli's opinion. *Murray*, 722 F.2d at 502.

The ALJ noted that Dr. Komanapalli's opinion was inconsistent with the medical record. Tr. 27. Inconsistency with the medical record is a specific, legitimate reason for rejecting a physician's opinion. *Tommasetti,* 533 F.3d at 1040. For example, examining physician David Buuck, M.D. opined that plaintiff's range of motion in her right shoulder was only "slightly limited," and found no evidence of a disabling right shoulder impairment. Because Dr. Komanapalli's limitations on handling, fingering, or feeling were allegedly due to plaintiff's shoulder impairment, Dr. Buuck's findings contradict his opinion. *See* Tr. 1597-98. Further, Dr. Komanapalli's opinion conflicted with his own findings that plaintiff's "grasping ability" was "completely intact." Tr. 901. On this record, the ALJ provided specific, legitimate reasons for rejecting part of Dr. Komanapalli's opinion. The ALJ's rejection of Dr. Komanapalli's opinion was not error.

**Plaintiff's Credibility**

Plaintiff next argues that the ALJ failed to properly credit her subjective symptom testimony. The Ninth Circuit has developed a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether

the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*,

504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

1991) (*en banc*)).  When doing so, the claimant "need not show that her impairment could

reasonably be expected to cause the severity of the symptom she has alleged; she need only show

that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d

1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281).  It is "not sufficient for the ALJ to make only general findings; he

must state which pain testimony is not credible and what evidence suggests the complaints are

not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).  Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96-7p, *available at* 1996 WL 374186.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

At the first hearing, plaintiff testified that she could not work because of headaches and pain in her back and shoulder, and that she had trouble walking due to her combined impairments. Tr. 57. She suffers from anxiety, depression, and PTSD, as well as fibromyalgia and pain in her right knee. Tr. 58-59. Plaintiff testified that she can only cook foods using the microwave, and that she requires assistance to complete simple chores like laundry. Tr. 60. She estimated that she can only lift 5 to 10 pounds and can sit or stand for only 15 to 20 minutes at a time. Tr. 60, 62. Plaintiff stated that she suffers from excessive pain and fatigue and must take regular naps. Tr. 63. Although she gets out of bed every day, she is not always able to dress herself. Tr. 66. She testified that she would not be able to work a regular full-time job because of her pain and fatigue. Tr. 65-66. Even with special accommodations she was unable to pass or complete her classes at community college, and received grades of "F" or "incomplete" in all her classes. Tr. 43, 64.

In rejecting plaintiff's testimony, the ALJ first noted that plaintiff had "a pattern of starting and stopping various medications on her own." Tr. 23. Specifically, plaintiff repeatedly stopped taking mental health medication on her own at various times. *See, e.g.,* Tr. 23, 923, 1006, 1130, 1575. The ALJ's inference that plaintiff was not as limited as alleged in her testimony, however, is not reasonable on this record. *See Sample*, 694 F.2d at 642 (an ALJ may "draw inferences logically flowing from the evidence"). While failure to follow through with medication regimens is ordinarily a clear and convincing reason to discount a claimant's credibility, here—as the ALJ notes—plaintiff ceased taking her medication for intelligible, health-related reasons. Tr. 23. For example, plaintiff stopped taking Wellbutrin in February of 2008 because she believed it was not helping with her anxiety. Similarly, she ceased taking Cymbalta after reporting a "traumatic" response to the medication. Tr. 23. Ken Lease, N.P., also encouraged plaintiff's cessation of some of her medications, stating in early 2007 that he was "proud of her" for stopping so many of her medications. Tr. 927. Finally, the ALJ's reasoning that plaintiff's intermittent use of medications "suggests that she has not consistently felt all the beneficial effects of her prescribed medications," rather supports a finding of plaintiff's credibility because it suggests that plaintiff's prescribed medications were not helping her. In light of the complete record, plaintiff's behavior with respect to her medication is not a clear and convincing reason to reject her testimony.

Second, the ALJ noted that plaintiff used conservative treatment to alleviate her pain. Tr. 26. Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Here, however, the ALJ merely states that plaintiff's primary care physician, Dr. McAndrew, stated that plaintiff "had a medical marijuana card and was treating her pain each night with

marijuana." Tr. 26.  Daily use of a prescribed medication to treat pain is not evidence of

conservative treatment, nor does it contradict plaintiff's subjective symptom testimony.

Plaintiff's use of medical marijuana was not a clear and convincing reason to reject her

credibility.[1]

As a third reason for rejecting plaintiff's credibility, the ALJ alleged inconsistencies

between plaintiff's testimony and the objective medical evidence.  Inconsistency with the

medical evidence is a sufficient basis for rejecting a claimant's testimony. *Carmickle*, 533 F.3d

at 1161.  The medical evidence cited by the ALJ, however, does not contradict plaintiff's

testimony.  For example, the Commissioner argues that plaintiff's contention that she could stand

only 15 to 20 minutes at a time and walk for one block was belied by a treatment note from Mary

Skrzynski, M.D., who reported in 2009 that plaintiff showed tearfulness at having her knee pain

resolved post-arthroplasty. *See* Tr. 1201 (noting that, 3 months after plaintiff's knee operation,

she was "[d]oing very well").  The court, however, finds no contradiction here; plaintiff has

clearly alleged physical problems aside from knee pain that could limit her ability to stand and

walk.  For this reason, the court also disagrees with the ALJ's assertions that MRI imaging of

plaintiff's spine contradicts plaintiff's contention that she can sit only 15 to 20 minutes at a time,

and that the lack of evidence of a disabling right shoulder impairment contradicted plaintiff's

statement that she can only lift 5 to 10 pounds.[2]  Tr. 19, 22, 25, 26, 62, 940, 1596.  In sum, the

---

[1] The Commissioner also argues that plaintiff reported her "[s]ymptoms better with medical marijuana and Tylenol," but cites pages in the record that do not substantiate these statements. *See* Def.'s Br. 11 (*citing* Tr. 1602, 1637).  Moreover, management of pain symptoms with both over-the-counter and prescribed medication is not, as defendant implies, analogous to the conservative treatment discussed in *Parra v. Astrue*. *See id.*; *Parra*, 481 F.3d at 750-51 (claimant's treatment of physical ailments with an over-the-counter pain medication is conservative treatment sufficient to support a finding of nondisability).

[2] The Commissioner also argues that plaintiff's GAF scores, which reveal an average of only "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning," contradict

Page 13 – REPORT AND RECOMMENDATION

ALJ failed to cite any straightforward contradictions between plaintiff's testimony and the medical record and therefore did not provide a clear and convincing reason for rejecting plaintiff's testimony.

As a final reason for discounting plaintiff's credibility, the ALJ noted a lack of medical evidence underlying plaintiff's complaints of disabling mental limitations. While lack of medical corroboration may be considered where other valid reasons exist for discrediting a claimant's testimony, subjective complaints cannot be rejected solely because they are not fully corroborated by medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Because the ALJ did not provide other valid reasons for discrediting plaintiff's testimony, the alleged lack of medical evidence underlying plaintiff's subjective symptom complaints does not support the Commissioner's credibility finding. The court therefore finds that the ALJ did not provide legally sufficient reasons for finding plaintiff not credible, and should be reversed.

**Lay Witness Testimony**

Plaintiff also argues that the ALJ improperly rejected the lay opinions of Patrick Bourlon, Mary Altman, Cynthia Carr, Lisa Akers, and Judith Legg. The ALJ may discredit lay witness testimony by providing a "germane reason." *Turner*, 613 F.3d at 1223-24 (explaining that an ALJ need only provide germane reasons to disregard lay witness testimony from "other sources"). Germane reasons for rejecting a lay witness' testimony include inconsistency with the objective medical evidence in the record. *Tommasetti*, 533 F.3d at 1041.

**1.     Treating Chiropractor Patrick Bourlon**

Dr. Bourlon opined that plaintiff had a disability and was unable to perform her past work as a dog groomer. Tr. 766, 851. The Regulations define witnesses such as Dr. Bourlon as

---

her testimony that she has "a hard time tolerating people." Def.'s Br. 9; Tr. 22, 63. Plaintiff's complete statement, however, was that she has difficulty tolerating people "when I don't get enough sleep." Tr. 63.

Page 14 – REPORT AND RECOMMENDATION

"[o]ther sources," and the ALJ was required to provide germane reasons for rejecting his opinion. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). An ALJ may reject an opinion that is unsupported by objective findings and based on subjective complaints, or conflicts with the medical evidence. *Batson v. Comm'r*, 359 F.3d 1190, 1194-95 (9th Cir. 2004); *Tommasetti*, 533 F.3d at 1041. Here, the ALJ assigned "very little weight" to Dr. Bourlon's opinion, stating that it was largely based on plaintiff's subjective complaints, and that it conflicted with the medical evidence. For example, Dr. Bourlon diagnosed thoracic and cervical spine dysfunction, but MRI testing elsewhere in the record revealed only mild findings in those areas. *Tommasetti*, 533 F.3d at 1041; *see* Tr. 19, 497, 851, 940. The ALJ thus provided a legally sufficient reason for rejecting Dr. Bourlon's opinion.

2.      **Mary Altman, L.C.S.W., and Cynthia Carr, L.C.S.W.**

Both Ms. Carr and Ms. Altman assessed very low GAF scores for plaintiff. As social workers, Ms. Altman and Ms. Carr are also "other" sources under the Regulations. 20 C.F.R. §§ 404.1513(d)(4), 416.913(d)(4). One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ rejected Ms. Carr and Ms. Altman's opinions because they conflicted with other medical evidence in the record, including GAF assessments that revealed a higher level of functioning. Tr. 24. On this record, the ALJ provided germane reasons for rejecting the lay opinions of Ms. Altman and Ms. Carr. *Lewis*, 236 F.3d at 511.

3.      **Lisa Akers and Judith Legg**

Plaintiff's daughter Lisa Akers and her mother Judith Legg also made statements regarding the nature and extent of plaintiff's impairments that largely echoed plaintiff's subjective symptom testimony. The ALJ credited these statements "to the extent" that they are

"accurate," stating that they were not supported by objective medical evidence in the record. Tr. 23. The ALJ, however, did not point out any contradictions between Ms. Akers' and Ms. Legg's testimony and the medical evidence; moreover, he appeared to reject their statements because they were based in part on plaintiff's subjective symptom reports. While an ALJ may properly reject lay testimony that is similar to a claimant's subjective complaints when the ALJ has provided clear and convincing reasons for rejecting those complaints, *Valentine v. Comm'r*, 574 F.3d 685, 694 (9th Cir. 2009), the ALJ here did not provide legally sufficient reasons for discrediting plaintiff's testimony. The ALJ thus did not provide adequate reasons for rejecting the opinions of Ms. Legg and Ms. Akers.

**Step Five Findings**

Plaintiff argues, finally, that the ALJ erred at step five by finding that plaintiff can perform jobs requiring frequent reaching, handling and fingering. Because the court finds the ALJ's decision warrants reversal on multiple other grounds, the court need not address this issue.

REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r*, 635 F.3d 1135, 1138-39 (9th Cir. 2011) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir 2004)). The court may not award benefits punitively and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision. *Connett v. Barnhart*, 340 F.3d 871 876 (9th Cir. 2003) (citing *Bunnell*, 947 F.2d at 348 (*en banc*)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010).

Here, reversal of the ALJ's decision is appropriate because he failed to provide legally sufficient reasons for rejecting plaintiff's credibility, or for rejecting the lay opinions of Ms. Akers and Ms. Legg. When the improperly rejected opinions are credited as true, the court can find no outstanding issues that must be resolved before a determination of disability can be made.[3] The court thus recommends that this case be reversed and remanded for the immediate payment of benefits.

### RECOMMENDATION

The ALJ's conclusion that plaintiff is not disabled is not supported by substantial evidence and should therefore be REVERSED and REMANDED for immediate payment of benefits.

---

[3] While a claimant's self-reported symptoms "alone are not enough to establish that" she is disabled, the court finds that, in addition to the statements of plaintiff and the improperly discredited lay witnesses, there is sufficient additional medical evidence in the record such that, taken as a whole, the record support a finding of disability. *See* 20 C.F.R. § 404.1528.

Page 17 – REPORT AND RECOMMENDATION

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections. *See* Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED this 10 day of January, 2014.

Mark D. Clarke

United States Magistrate Judge